## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

DEBRA L. BAILEY,           )
                           )
     Plaintiff,          )
                           )
     v.               )       CAUSE NO.: 2:13-CV-423-TLS
                           )
CAROLYN COLVIN,        )
Commissioner of Social Security,   )
                           )
     Defendant.        )

## OPINION AND ORDER

The Plaintiff, Debra L. Bailey, seeks review of the final decision of the Commissioner of

the Social Security Administration denying her application for Disability Insurance Benefits. The

Plaintiff requested a hearing after her applications were denied initially and upon

reconsideration. In May 2012, an administrative law judge (ALJ) held a hearing on the Plaintiff's

application. On June 7, 2012, the ALJ issued a Decision finding that the Plaintiff was not entitled

to benefits because she was not disabled under the relevant provisions of the Social Security Act.

In July 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's

decision the final decision of the Commissioner. The Plaintiff then filed suit pursuant to 42

U.S.C. § 405(g).

## STANDARD OF REVIEW

In an appeal from the denial of social security benefits, the court is not free to replace the

ALJ's estimate of the medical evidence with its own. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir.

2009) (stating that the court may not reweigh the evidence or substitute its judgment for that of

the ALJ). Instead, the court reviews the ALJ's decision for substantial evidence, 42 U.S.C. §

405(g), meaning that the court ensures that the decision rests on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When an ALJ recommends that the agency deny benefits, it must first "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. *See* 20

C.F.R. § 404.1520. Here, the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2009, and thus satisfied the step one inquiry. At step two, the ALJ determined that the Plaintiff had the following severe impairments: obesity, osteoarthritis of the left knee, right ankle arthritis, and degenerative changes of the lumbar spine. Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in" appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment rises to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." *Id.* at § 404.1520(d). But if the impairment falls short, an ALJ must examine the claimant's "residual functional capacity"(RFC)—the types of things he can still do physically despite his limitations—to determine whether he can perform this "past relevant work," *id.* at § 404.1520(a)(4)(iv), or, failing that, whether the claimant can "make an adjustment to other work" given his "age, education, and work experience," *id.* at § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairment and combination of impairments did not meet or equal any of the listings in appendix 1, and that she had the RFC to perform less than the full range of sedentary work as defined by 20 C.F.R. § 404.1567(a). The ALJ concluded that the Plaintiff could lift and/or carry and push and/or pull up to 10 pounds occasionally, and lesser weights frequently; sit for six hours in an eight-hour workday; and stand and/or walk for two hours in an eight-hour workday. She could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, or crouch. The Plaintiff could never kneel or crawl. Additionally, the Plaintiff was to avoid concentrated exposure to unprotected heights, and wet uneven surfaces. Because a sufficient number of jobs existed in the national economy that

the Plaintiff could perform with her restriction to less than the full range of sedentary work, the ALJ denied her claim.

On appeal to this Court, the Plaintiff claims that the ALJ inadequately considered all of the Plaintiff's impairments, improperly assessed the credibility of the Plaintiff and the Plaintiff's sister, and erred by failing to include the need for a sit/stand option in the RFC, a restriction that would have rendered her unable to perform any jobs.

## A. Combination of Impairments

The Plaintiff argues that the ALJ erred at step two of the sequential analysis by failing to find that her arthritic changes of the feet, plantar fasciitis, chronic obstructive pulmonary disease, hypertension, depression, and insomnia were severe impairments. The Plaintiff asserts that if the proper assessment of her impairments had been made at step two, "a finding of disabled would ensue at Step Five." (Pl.'s Brief 10–11, ECF No. 20.) The Plaintiff also asserts that the ALJ failed to adequately consider the Plaintiff's obesity, particularly its impact on her knees, feet, and back.

An impairment "is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The burden is on the claimant to prove that the impairment is severe. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). The Seventh Circuit has said that the step two requirement of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (same). The claimant must satisfy this preliminary step before the ALJ can consider whether any severe impairment meets a listing at step three and

whether the entirety of her impairments prevent her from working at steps four and five. *See Skinner v. Astrue*, 478 F.3d 836, 844 n.1 (7th Cir .2007) .

As stated above, the ALJ determined that the Plaintiff had four severe impairments: obesity; osteoarthritis of the left knee; right ankle arthritis, and; degenerative changes of the lumbar spine. The ALJ also discussed the Plaintiff's chronic obstructive pulmonary disease, hypertension, insomnia, depression, bilateral shoulder pain, stomach pain, and left foot problems, finding that they caused no more than a minimal limitation on her ability to engage in basic work activities and were thus not severe for purposes of his decision. The ALJ offered detailed findings to address each of these impairments. Substantial evidence, including physician treatment notes and recommendations, diagnostic test results, and responses to medications, supported the ALJ's findings, and the Plaintiff does not point to any evidence that the ALJ ignored or overlooked. The Court will not reweigh the evidence and substitute its judgment for the ALJ's. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("We do not 'reweigh the evidence' in reviewing the ALJ's determination.") (quoting *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002)).

In any event, "this particular determination is of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process." *Castile*, 617 F.3d at 927. In step four of the evaluation, the ALJ discussed the Plaintiff's back pain, knee pain, right foot and ankle pain, and arthritis. Although the ALJ did not mention the Plaintiff's chronic obstructive pulmonary disease, hypertension, depression, or insomnia, the Plaintiff has not indicated how these impairments impacted her ability to perform sedentary work. Indeed, she has not identified a

5

single limitation arising from these impairments, either alone or in combination with her other impairments. As the ALJ found at step two, the chronic obstructive pulmonary disease was noted to be stable since the alleged onset date and the Plaintiff reported no respiratory disease in 2012. The ALJ noted that the Plaintiff's hypertension was also found by her treating physician to be well controlled and stable. Additionally, the Plaintiff testified that her high blood pressure was controlled "very well" with medication. (R. at 53.) Her insomnia was noted to be improved with over-the-counter medications, and the Plaintiff does not suggest how it would have impacted her ability to perform sedentary work. The ALJ's step two analysis included extensive discussion of the Plaintiff's depression, (R. at 24), and the Plaintiff testified that she did not have any mental problems that prevented her from working (R. at 50). An applicant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a). The ALJ did not ignore an entire line of evidence that was contrary to his findings. Without any limitations associated with the chronic obstructive pulmonary disease, hypertension, depression, or insomnia, there was no reason for the ALJ to discuss them when determining what the Plaintiff could still do despite her limitations and whether she could perform her past relevant work. *See Prochaska*, 454 F.3d at 737 ("controllable conditions do 'not entitle one to benefits or boost one's entitlement by aggravating another medical condition.'") (quoting *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)).

The Plaintiff's claim that the ALJ failed to assess the affect of her obesity on her other impairments, and that this failure is reason enough to require a remand, is incorrect. First, there is no indication that the ALJ gave insufficient weight to the effect of the Plaintiff's obesity on her joint problems. The ALJ clearly found that the Plaintiff's obesity was a medically

determinable impairment that caused more than minimal limitations on her ability to engage in basic work activities. (R. at 23.) He determined that her obesity, in conjunction with her other severe impairments, did not meet a listing that would create a presumption of disability, but noted that he "considered the claimant's obesity when assessing her residual functional capacity." (R. at 26.) He then crafted an RFC that included limited standing, walking, lifting, carrying, pushing, and pulling and eliminated kneeling or crawling. Nothing suggests that the ALJ, having found that the Plaintiff was morbidly obese, disregarded that finding when determining what she could still do despite her limitations. After discussing her medical history from the end of 2009 to the first quarter of 2012, the ALJ wrote: "despite the relatively benign physical findings, the undersigned has considered the claimant's severe physical impairments, including her obesity, by finding she is capable of performing no more than the exertional requirements of sedentary work. In addition, the undersigned finds the claimant has postural and environmental limitations as well." (R. at 28.) During the period of time under review there was no point at which the Plaintiff was not obese, and various medical records note her weight or her BMI. These are the same medical records the ALJ considered. For her part, the Plaintiff has not explained how her obesity aggravates her other conditions, or even claimed that it does, or that it caused any functional limitations. Accordingly, she does not satisfy her burden. *See Mueller v. Colvin*, 524 Fed. Appx. 282, 286 (7th Cir. 2013) ("[A]ny error in failing to mention obesity is harmless if the claimant did not explain to the ALJ how her obesity aggravated her condition and rendered her disabled.") (citing *Prochaska*, 454 F.3d at 737; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

**B.      The Credibility Determination**

The Plaintiff's remaining arguments can best be characterized as an attack on the ALJ's

credibility determination. This court will sustain the ALJ's credibility determination unless it is

"patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir.

2007); *Prochaska*, 454 F.3d at 738 ("Only if the trier of fact grounds his credibility finding in an

observation or argument that is unreasonable or unsupported . . . can the finding be reversed.").

The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson*

*v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *see also Allord v. Barnhart*, 455 F.3d 818, 821

(7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them

"in a way that affords meaningful review," the ALJ's credibility determination is not entitled to

deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such

determinations rest on objective factors or fundamental implausibilities rather than subjective

considerations [such as a claimant's demeanor], appellate courts have greater freedom to review

the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see also Carradine v.*

*Barnhart*, 360 F.3d 751, 753–54 (7th Cir. 2004) (acknowledging that ALJ's finding that claimant

exaggerated her pain would ordinarily be conclusive on appeal, but that remand was necessary

because "the administrative law judge based his credibility determination on serious errors in

reasoning rather than merely the demeanor of the witness").

An ALJ must consider a claimant's subjective complaints of pain if the claimant has a

medically determined impairment that could reasonably be expected to produce that pain. 20

C.F.R. § 404.1529(c)(1); *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014). Although a

claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ

may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96–7p, at \*1; *Moore*, 743 F.3d at 1125. Neither is the ALJ required to "give full credit to every statement of pain, and require a finding of disabled every time a claimant states that she feels unable to work." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996 (quotation marks omitted) (quoting *Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993)).

In arriving at the RFC, the ALJ acknowledged the Plaintiff's testimony regarding her intense pain in her left knee, back, and feet, and her limitations on walking, standing, and sitting. The ALJ gave consideration to the Plaintiff's subjective complaints, but discounted the severity of her stated limitations. In doing so, the ALJ discussed the Plaintiff's medical record, which revealed to him that the Plaintiff's impairments have less impact on her ability to work than one would infer just from her testimony. In fact, the physical findings were "relatively benign." (R. at 28.) The Plaintiff's physicians never expressed the opinion that she was unable to work because of her claimed impairments. But the ALJ, as instructed by SSR 96-7p, did not rely merely on the absence of medical evidence. SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." An ALJ should consider elements such as:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures, other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms.

SSR 96-7p; *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

The ALJ's opinion included a discussion of the non-medical evidence. He noted that despite her claims of intense pain in her left knee, back and feet, the Plaintiff reported that she customarily used only over-the-counter pain medication, pain patches, and pain gels to relieve her symptoms. (Tr. at 28.) The Plaintiff reported that prescription pain medication makes her lightheaded and groggy, but also stated that she only occasionally used her narcotic pain medication, even at night. She also testified that she usually only used her anti-inflammatory medication during the winter when it was damp outside. (Tr. at 28.) The ALJ stated that it had been recommended for several years that the Plaintiff undergo a left knee replacement, a surgery the Plaintiff elected not to have. The Plaintiff argues that she was not required to undergo surgery to be found disabled. This does, however, mean that it was improper for the ALJ to consider the Plaintiff's willingness to undergo left knee replacement in assessing her claimed limitations, especially given that she had previously undergone successful right knee replacement. The Plaintiff had already stated that Cortisone and epidural injections had not provided long term relief. The ALJ also noted that while the Plaintiff reported using a cane, there was no evidence in the record that it was medically necessary, and, during her consultative exam, she was observed to have a steady gait without the use of an assistive device. The ALJ also noted two separate seven month periods where the Plaintiff did not seek treatment for her knee, ankle, or back pain. Additionally, she did not see her treating orthopedist from December 2010 until January 2012, a period of over a year. The ALJ's discussion of these factors provides substantial support to his conclusion that her pain was not as intense as she claimed.

The ALJ's rejection of the Plaintiff's functional limitations, particularly as they relate to a need to alternate between sitting and standing, is more problematic. The ALJ noted that the Plaintiff was able to drive about 40 minutes to the hearing without needing to stop, which was inconsistent with her testimony concerning her inability to sit for more than 20 minutes before having to change positions. However, she also testified that an ergonomic chair would potentially allow her to sit for up to 2 hours. It is not clear whether the seat in her automobile was more akin to an ergonomic chair or to some other kind of seating. Common experience dictates that automobile seats recline and change positions, but also that driving is a task that does not allow for much movement and certainly does not allow the driver to stand up. The ALJ's reliance on the Plaintiff's 40 minute drive to discount her need to alternative positions requires further explanation.

The ALJ noted that the Plaintiff's testimony that she could only stand for 10 to 15 minutes without causing pain was in conflict with her report in March 2012 that she spent about 60 percent of her waking hours on her feet. The report was from an exam in which the Plaintiff was seeking treatment for pain in the arches in her feet. But the report about the amount of time spent on her feet does not contradict her testimony about needing to change positions after sitting for 20 minutes.

The ALJ did discuss sitting when he considered it important that the Plaintiff was observed during her initial interview with the field office to have some discomfort, as she was rubbing her legs and adjusting in her seat quite often, but was also observed to have no problems with sitting, standing, or walking. However, the ALJ did not comment on the length of time any of these activities were observed, or how it otherwise impacted his assessment of the Plaintiff's

11

statement that she could only sit for 20 minutes at a time.

In discussing the Plaintiff's daily activities, he noted that she was able to dust mop and sweep every day, cook and do the dishes, do laundry, and go shopping. The Plaintiff faults the ALJ for relying on the Plaintiff's ability to perform household chores. The Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if th[ey] can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). "[I]t is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, SSR 96–7p, at *3," as long as it is "done with care." *Roddy*, 705 F.3d at 639. Here, the ALJ did not overstate the Plaintiff's ability to perform daily activities, but neither did he indicate the significance he attached to them. For example, the ALJ did not indicate whether performance of the activities was done all at once, or with breaks for postural changes, such that it would be reasonable to use the activity to discredit the Plaintiff's statements about her need to change positions often. None of the cited activities is necessarily inconsistent with the need to alternate between sitting and standing. The ALJ also cited the Plaintiff's sister's Third Party Functional Report, where she reported that the Plaintiff cared for herself and three cats, prepared meals, performed light cleaning and laundry, drove a car, and shopped in stores. He did not mention that the Plaintiff used a motorized cart to shop or indicate how long the activities took to complete.

Based on his assessment of the Plaintiff's record, including her impairments of osteoarthritis of the left knee, arthritis of the right ankle, and degenerative changes of the lumbar spine, the ALJ found that the Plaintiff could perform no more than sedentary work, with certain restrictions. He did not believe it necessary that the Plaintiff's restrictions include an allowance

for alternating between sitting and standing. It is this finding that has not been adequately explained in the ALJ's credibility assessment and requires remand. Upon remand, the ALJ should also take the opportunity to clearly articulate how he factored the Plaintiff's obesity into any restrictions related to sitting, standing, or alternative between the two.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on January 5, 2015.

        s/ Theresa L. Springmann
        THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT
        FORT WAYNE DIVISION